UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO THOMAS, | : | CIVIL ACTION NO. 3:10-cv-2249 |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | **FILED** |
| | : | **SCRANTON** |
| | : | |
| DAVID VARANO, ET AL., | : | MAR 1 2 2012 |
| | : | |
| Defendants | : | PER _____ |
| | | DEPUTY CLERK |

## MEMORANDUM

### Background

    This pro se civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Antonio Thomas, an inmate presently confined at the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.).[1] An Amended Complaint (Doc. 33) was filed on March 22, 2011. Defendant Muhammad Ikram M.D.'s unopposed motion to dismiss the Amended Complaint was granted and Plaintiff's motion for an enlargement of time (Doc. 68) was denied by Memorandum and Order dated January 3, 2012.[2]

    Additionally named as Defendants in this matter are the following SCI-Coal Twp. Officials: Superintendent David Varano; Health Care Administrator Kathryn McCarty; Nurse Supervisors Christopher Yackiel and Mary Hensler; Nurses Melissa DiRienzo, Ellen Hill, and Sherri Mummy; as well as Correctional Officers Jill Whipple, William Reitz, and James Delbaugh (hereinafter the Commonwealth Defendants).

---

    [1] Plaintiff was transferred back to SCI-Coal Twp. from the State Correctional Institution, Graterford, Pennsylvania (SCI-Graterford) in early December, 2011. See (Doc. 68).

    [2] Dr. Ikram is a psychiatrist employed as an independent contractor at SCI-Coal Twp.

Plaintiff is also proceeding against Prison Health Services (PHS) and the following PHS employees: Rodney Companion, M.D.; Stanley Stanish, M.D.; Miguel Salomon, M.D.; and Physician Assistant (PA) Brian Davis (hereinafter the PHS Defendants).

The following factual assertions are set forth in the Amended Complaint. Thomas describes himself as being a fifty-three (53) year old African American inmate with pre-existing cardiac problems when transferred to SCI-Coal Twp. in 2005 "with two voluminous medical files." See (Doc. 33, ¶ 19). His accompanying medical records purportedly included information indicating that his prostate specific antigen (PSA) levels were rising.[3] With respect to the Commonwealth Defendants, Plaintiff states that upon his arrival at the prison he underwent an intake medical examination which included a DRE[4] test by PA Davis and was told that he had no signs of cancer. Despite having the responsibility to do so during the intake process, Health Care Administrator McCarty allegedly "failed to review plaintiffs's PSA levels." Id. at ¶ 26.

Plaintiff allegedly became ill in March, 2006, his symptoms included abdominal and back pain. After ineffective treatment with laxative and antibiotics by some of the PHS Defendants, Thomas was scheduled for a July 19, 2006 PSA test. However, Commonwealth Defendants McCarty, Yackiel, and Hensler along with some PHS Defendants purportedly failed to provide Thomas with sufficient information regarding prostate cancer and PSA testing. See id. at ¶ 28. On the day of his scheduled PSA test, Plaintiff asserts that while waiting in the prison's Medical Department he became aggravated with CO Whipple's "antagonistic manner," signed a release

---

[3] Plaintiff explains that PSA testing is commonly used in the detection of prostate cancer. Thomas also asserts that African American men have a greater risk of developing prostate cancer at a young age.

[4] Presumably DRE refers to a digital rectal examination, which is commonly used to detect abnormalities of the prostate.

form, and returned to his housing unit prior to administration of the test. Id.

As a result, Plaintiff's ineffective treatment with antibiotics and laxatives was continued by his treating physicians without a rescheduling of the PSA test. Thomas next notes that during a July 17, 2007 annual physical examination he refused to allow PA Davis to preform a DRE test because he was not feeling well. However, Plaintiff asserts that he "agreed to take a PSA test" which "unbeknownst to him" was scheduled for the following day. Id. at ¶ 32. The next day Plaintiff was called to the medical department and asked why he failed to show up for the PSA test which had been scheduled for earlier that day. He apparently told the medical staff that his non-appearance occurred because his name had not been placed on the medical call out list.[5]

Despite that scheduling confusion, a PSA test was performed three days later, on July 21, 2007. See id. at ¶ 34. On July 26, 2007, the prison's Medical Department was informed that Plaintiff had a very high PSA test result which "indicated that plaintiff most likely had cancer that has spread beyond the prostate." Id. at ¶ 35. However, Plaintiff alleges that he was informed of those test results until a September 14, 2007 with Doctor Salomon. Five (5) days later orders were issued for Thomas to undergo a needle biopsy of his prostate gland at Geisinger Medical Center.

An intake evaluation for Inmate Thomas was scheduled (and apparently conducted) at Geisinger Medical Center on December 18, 2007. On February 7, 2008, Plaintiff reportedly refused to be transported to the Geisinger Urology Department for the purpose of undergoing the scheduled needle biopsy because CO Reitz and Nurse DiRienzo refused to provide him with

---

[5] There is no contention that any Commonwealth Defendant was responsible for that alleged scheduling failure.

information regarding his diagnosis and recommended treatment plan.[6]

A second PSA test was subsequently performed which indicated that Plaintiff now had an extremely high level. Plaintiff admits that he refused to allow PA Davis to perform a DRE test on July 29, 2008 and was required by Nurse DiRienzo under threat of punishment to sign a release form. As a result of the prisoner's refusal, the ineffective course of treatment previously ordered was continued by Doctors Companion and Stanish.

Plaintiff was referred to an oncologist on August 8, 2008 by Doctor Weisner. Approximately one week later, Weisner gave Plaintiff a book on prostate cancer. Plaintiff alleges that he when he tried to meet with Doctor Weisner on August 19, 2008, he was prevented from doing so by Defendant Whipple. It is further asserted that Whipple would not permit him to participate in a teleconference consultation with a Doctor Kisierowski.[7] See id. at ¶ 48.

On October 13, 2008, thirteen (13) months after it was initially ordered, Plaintiff underwent a needle biopsy. Two weeks later, on October 25, 2008, Thomas filed an institutional grievance asserting that there had been deliberate indifference to his serious medical needs. Plaintiff explains that he delayed initiating a grievance because he was in shock over the realization that he had a fatal disease. Nursing Supervisor Yackiel was assigned to investigate the grievance.

On November 1, 2008, the results of the needle biopsy, which were faxed to Defendant McCarty, confirmed that Plaintiff "had advanced metastatic prostate cancer that has spread to the marrow of plaintiff's bones." Id. at ¶ 52. McCarty scheduled Plaintiff to meet with Doctor

---

[6] The Amended Complaint additionally observes that prison authorities may administer treatment to an unwilling inmate patient. See id. at ¶ 43.

[7] Kiesierowski is not named as a defendant and it is unclear as to the nature of his involvement, if any, in Plaintiff's treatment.

Weisner to discuss a treatment plan.  After a seventeen (17) day delay, Thomas had a November

18, 2008 consultation with Doctor Weisner.  During that meeting, Plaintiff alleges that Nurse

Hensler attempted to coerce him into discontinuing his grievance.  Later that same day,

Defendant Yackiel similarly tried to have Thomas withdraw the grievance.  Plaintiff's grievance

was denied two days later on the misrepresented basis that it was he was responsible for any

treatment delays.

        The Amended Complaint next asserts that cancer treatment was ordered for Plaintiff on

November 21, 2008.  See id. at ¶ 59.  Nurse DiRienzo gave Plaintiff an injection of Zoladez to

prevent a flair reaction (increase in testerone) on November 27, 2008 ("as a first time treatment"

of Plaintiff's cancer).  Id. at ¶ 61.  However, prior to giving the injection DiRienzo failed to give

Plaintiff the medication Casodex as had been ordered by Dr. Weisner.  Plaintiff describes this

error as being deliberate misconduct by DiRienzo.

        It is next alleged that Warden Varano violated Plaintiff's constitutional rights by failing to

take corrective action with respect to the inmate's grievance appeal.  According to Thomas, CO

Whipple again interfered with his cancer treatment on May 15, 2009 by causing a one hour delay

in this cancer injection, which was already one day overdue.  As a result of CO Whipple's

conduct, Plaintiff purportedly suffered a flair reaction that caused him unnecessary pain and

suffering.

        On June 1, 2009, CO Reitz and Sergeant Delbaugh allegedly prevented Plaintiff from

having a meaningful review of his medical records by not allowing him to take notes.  The

Amended Complaint contends that despite being sent a written request, Defendant McCarty

failed to timely order Plaintiff's June 11, 2009 cancer medication.  This purported delay caused

Thomas to suffer another flair reaction.  On July 5, 2009, Reitz violated Plaintiff's privacy rights

by requiring him to discuss his medical records with a physician in the presence of approximately twenty other prisoners.

Later that month, Nurse Mummy failed to properly inject Plaintiff's cancer medication. Thomas also asserts that he was denied an August, 2009 cancer injection by Nurse Jane Doe. During September 2009, Nurse Hill allegedly gave Thomas two Vicodin tablets that were not prescribed for him. The erroneously dispensed medication allegedly caused Plaintiff to faint. Nurse Hill also acted improperly by denying Plaintiff's request for medication to induce vomiting. Thomas states that he was again given non-prescribed medication by an unidentified person on September 30, 2009. Plaintiff seeks declaratory relief along with compensatory and punitive damages.

Presently pending is the Commonwealth Defendants' motion to dismiss the Amended Complaint. See (Doc. 38). The motion is ripe for consideration. Also before the Court is Plaintiff's motion seeking appointment of counsel. See (Doc. 72).

## Discussion

## Appointment of Counsel

It is initially noted that Thomas' latest request for counsel was filed well after submission of the Commonwealth Defendants' motion to dismiss as well as the time period for opposing said motion. See (Doc. 72).

Second, by Orders dated November 29, 2010 and April 12, 2011, this Court denied two prior motions by Thomas which similarly sought appointment of counsel. However, Plaintiff was advised by those Orders that if future proceedings demonstrated the need for counsel, his request would be reconsidered.

Despite his illness, Plaintiff has continued to demonstrate a reasonable ability to litigate

this action <u>pro se</u>. Although Plaintiff is undergoing treatment for prostate cancer, he was recently able to submit a twenty-nine (29) page brief in opposition to the pending motions to dismiss which was accompanied by approximately ten (10) pages of exhibits.

Accordingly, it is apparent that appointment of counsel is not required prior to the disposition of the pending dispositive motions. See <u>Tabron v. Grace</u>, 6 F.3d 147, 153, 155-57 (3d Cir. 1993). Consequently, for the reasons previously set forth by this Court, Thomas' latest request for appointment of counsel will likewise be denied. However, in the event that this matter proceeds to trial, his request will be reviewed.

## Motion to Dismiss

Commonwealth Defendants claim entitlement to entry of dismissal on the grounds that: (1) the Amended Complaint was filed without leave of Court or Defendants' consent; (2) the claims against them in their official capacities should be dismissed; (3) all claims before October 25, 2008 are time barred; (4) a viable denial of access to the courts claim has not been stated; (5) the Amended Complaint does not sufficiently set forth a claim of retaliation; and (6) Thomas fails to state a medical deliberate indifference claim upon which relief may be granted,

## Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint

should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 536 U.S. 662, 129 S.Ct 1937, 1949 (2009).

This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Twombly, 550 U.S. at 556. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562.

A civil rights complaint should allege the conduct violating plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 1950; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). It is additionally noted that pro se pleadings are to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Consent to Amend**

The initial argument raised by the Commonwealth Defendants is that Plaintiff's Amended Complaint should be dismissed because it was not timely filed and was submitted without either leave of Court or the consent of the Defendants. See (Doc. 39, p. 3).

Federal Rule of Civil Procedure 15(a) provides:

(a) Amendments Before Trial.
    (1) Amending as a matter of course.   A party may amend its pleading once as a matter of course:
        (A)    21 days after serving it; or
        (B)    if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Plaintiff filed a motion requesting leave to submit an Amended Complaint in January 24, 2011. See (Doc. 21).  On February 4, 2011, the Commonwealth Defendants filed a motion to dismiss the Original Complaint.  See (Doc. 22).

The Amended Complaint was filed on March 16, 2011,[8] admittedly more than twenty-one (21) days after service of the Commonwealth Defendants' motion to dismiss, but prior to any disposition of Thomas' initially submitted motion to amend.  All Defendants thereafter filed respective responses to the Amended Complaint.  The Commonwealth Defendants are the only individuals who have objected to the submission of the Amended Complaint.

Rule 15(a)(2) additionally provides that "[t]he court should freely give leave when justice so requires."  Moreover, pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

The Commonwealth Defendants' request for dismissal of the Amended Complaint will be denied because: (1) it is well settled that pro se litigants are afforded liberal treatment; (2) Thomas timely filed a motion to amend; (3) the other Defendants have not objected to the submission of the Amended Complaint; and (4) the Amended Complaint is set forth in a clear

---

    [8] The Amended Complaint is dated March 16, 2011 and will be deemed filed as of that date. See Houston v. Lack, 487 U.S. 266 (1988) (A prisoner's submission is deemed filed at the time it is given to prison officials for mailing to the Court.).

and precise manner which aids in the resolution of this matter.

**Eleventh Amendment**

The Commonwealth Defendants' second argument contends that Plaintiff's action to the extent that it asserts claims for monetary damages against them in their official capacities is barred by the Eleventh Amendment. See (Doc. 39, p. 3).

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages. Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003). Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency. Will v. Michigan Department of State Police, 491 U.S. 58, 70-71 (1989); Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005). As such, Plaintiff's damage claims for monetary damages brought against any of the Commonwealth Defendants in their respective official capacities are considered to be against the state itself and are barred by the Eleventh Amendment.[9]

**Statute of Limitations**

The next argument raised by the Commonwealth Defendants maintains that "any claims that arose prior to October 26, 2008 are time barred." (Doc. 39, p. 4). Specifically, it is argued that any allegations set forth in paragraphs 18-51 of the Amended Complaint are untimely.

In reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions. Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg

---

[9] Plaintiff's claims for injunctive relief against the Commonwealth Defendants in their official capacities are not barred by the Eleventh Amendment. See Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

County Police Dept., 91 F.3d 451, 457 n.9 (3d Cir. 1996); Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).  The United States Supreme Court clarified its decision in Wilson when it held that "courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250 (1989); Little v. Lycoming County, 912 F. Supp. 809, 814 (M.D. Pa.), aff'd 101 F.3d 691 (3d Cir. 1996) (Table). It has also been held that "state statutes of limitations should be borrowed for suits under Bivens." Roman v. Townsend, 48 F. Supp. 2d 100, 104 (D. Puerto Rico 1999).  Pennsylvania's applicable personal injury statute of limitations is two years.  See 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir.), cert. denied, 474 U.S. 950 (1985).  Hence, this Court agrees that a two year statute of limitations is applicable in the present case.

Thomas' pending Complaint is dated October 25, 2010 and will be deemed filed as of that date.  See Houston, 487 U.S. at 271 (a prisoner's complaint is deemed filed at the time it was given to prison officials for mailing to the Court).  The question of when a cause of action accrues is a question of federal law.  Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995).  A § 1983 claim accrues when the facts which support the claim reasonably should have become known to the plaintiff.  However, if a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing pattern falls within the limitations period.  Brenner v. Local 514, 927 F. 2d 1283, 1295 (3d Cir. 1991).

Based upon a review of Plaintiff's allegations, it is apparent that he became aware that he had cancer for which he had not been receiving proper treatment for as far back as September 14, 2007 when he was informed that his PSA test results indicated that he most likely had cancer which had spread beyond the prostate.  See (Doc. 33, ¶ 35).  The Amended Complaint includes

claims that there was deliberate indifference to Plaintiff's cancer both prior to and after September 14, 2007. Some of the pending deliberate indifference claims raised by Thomas in this action were timely filed. Therefore, it appears that the continuing pattern exception contemplated under Brenner may be applicable. In light of the failure of the pending motion to dismiss to address the applicability of the continuing pattern exception, the request for dismissal on the basis of untimeliness will be denied.

**Access to the Courts**

Commonwealth Defendants further assert that Plaintiff's claims that COs Reitz and Delbaugh denied him permission to take notes when reviewing his institutional medical records and made him discuss his personal medical issues with a doctor in front of other prisoners on a single date do not set forth viable denial of access to the courts claims because the Amended Complaint does not demonstrate that Plaintiff suffered any actual injury. See (Doc. 39, p. 14).

Inmates have a constitutional right of meaningful access to the law libraries, legal materials, or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). In Lewis v. Casey, 518 U.S. 343, 351-54 (1996), the Supreme Court clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts. Id.

Here, there are no contentions that the alleged deprivation of Plaitniff's ability to take notes or being required to consult with a doctor in the presence of other prisoners on a single occasion caused Thomas to miss a deadline relating to any civil or criminal litigation. Plaintiff has also not set forth a single specific instance showing that either of the alleged acts of misconduct interfered with his ability to pursue a legal remedy. Based upon those factors, this

Court is satisfied that Plaintiff has not satisfied his burden under <u>Lewis</u> of establishing that he suffered any actual injury with respect to either the alleged improper denial of his ability to take notes while reviewing his medical records or being denied the opportunity to have a private conversation with a physician. The motion to dismiss will be granted with respect to any portion of the Amended Complaint which asserts a denial of access to the courts claim.

**Retaliation**

Plaintiff's Amended Complaint includes bald assertions that many of the alleged acts of constitutional misconduct attributed to the Commonwealth Defendants were undertaken as retaliation for his initiation of complaints and the perceived lack of cooperation with respect to his medical care. For instance, Plaintiff contends that Nurse DiRienzo and Co Reitz subjected him to retaliation "for complaining about abusive treatment." (Doc. 33, ¶ 41).

To establish a retaliation claim, an inmate plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (<u>Id</u>.) (quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (<u>Id</u>.) (quoting <u>Suppon v. Dadonna</u>, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." <u>Rauser</u>, 241 F.3d at 333-34 (quoting <u>Mount Health Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of

establishing a causal link between the two events.[10]  See Lape v. Pennsylvania, 157 Fed. Appx.
491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a
preponderance of the evidence that they "would have made the same decision absent the
protected conduct for reasons reasonably related to penological interest." Carter v. McGrady,
292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted).  When analyzing a
retaliation claim, it must be recognized that the task of prison administrators and staff is difficult,
and the decisions of prison officials require deference, particularly where prison security is
concerned. Rauser, 241 F.3d at 334.

Filing of a lawsuit is protected activity under the First Amendment right of prisoners to
petition the court. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson,
652 F.2d 371, 373-74 (3d Cir. 1981).  The submission of grievances is also constitutionally
protected conduct. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  Based upon
Plaintiff's contention that he was subjected to retaliation raising concerns about his medical
treatment to various correctional officials, it appears at this juncture that the first prong of
Rauser, i.e., that the Plaintiff be engaged in a constitutionally protected activity, has been
arguably satisfied.

With respect to the second prong of Rauser, as evidenced by his initiation of the pending
action, Thomas continued to pursue medical complaints throughout his SCI-Coal Twp.
confinement, as a result of that continued activity, this Court is satisfied that entry of dismissal is
appropriate with respect to the contention of retaliation under Rauser because the purported

---

[10] Only where the facts of a particular case are "unusually suggestive" of a retaliatory
motive will temporal proximity, standing alone, support an inference of causation. Krouse v.
American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

adverse action suffered by Thomas did not deter him from continuing to exercise his First Amendment rights.

**Respondeat Superior**

Commonwealth Defendants contend that the Amended Complaint, to the extent that it seeks to assert liability based upon "the operation of respondeat superior", is subject to dismissal. (Doc. 39, p. 5).

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Based upon the standards announced in Rode, this Court agrees with the Commonwealth Defendants' contention that any attempt by Plaintiff to establish liability against Superintendent

Varano, Health Care Administrator McCarty, or any of the Commonwealth Defendants solely

based upon a supervisory position which they held within SCI-Coal Twp. is subject to dismissal.

**Grievance Procedure**

It is also argued that any claims against the Commonwealth Defendants, especially Nurse

Supervisor Yackiel, Superintendent Varano, and Health Care Administrator McCarty, based

upon their handling of Thomas's institutional grievances should be dismissed.  See (Doc. 39, p.

10).

Inmates do not have a constitutional right to a prison grievance system.  See Jones v.

North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, 2008 WL

2600723, *1 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he

existence of a prison grievance procedure confers no liberty interest on a prisoner.").

Consequently, any attempt by Plaintiff to establish liability against any Commonwealth

Defendant solely based upon the substance of, or lack of response to, institutional grievances or

complaints which they received from Thomas does not support a constitutional due process

claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005) (concluding

that involvement in post-incident grievance process is not a basis for § 1983 liability); Pryor-El

v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (finding that because prison grievance procedure

does not confer any substantive constitutional rights upon prison inmates, the prison officials'

failure to comply with grievance procedure is not actionable).  Accordingly, dismissal in favor of

the Commonwealth Defendants for any claims stemming from their review of Plaintiff's

grievances and complaints is appropriate.

**Deliberate Indifference**

The final argument raised by the Commonwealth Defendants is that the Amended

Complaint does not set forth any facts which could support a claim that they acted with deliberate indifference to Plaintiff's serious medical needs.

The Amended Complaint sets forth the following claims of deliberate indifference against the Commonwealth Defendants: (1) McCarty failed to review Thomas' PSA level upon his 2005 entry into the prison; (2) McCarty, Yackiel and Hensler neglected to provide Plaintiff with information regarding prostate cancer and PSA testing in 2006; (3) Whipple engaged in antagonistic behavior which resulted in the inmate's withdrawal from PSA testing on July 19, 2006; (4) delay in informing Thomas of his July 21, 2007 PSA test results; (5) Reitz and DiRienzo refused to provide information which caused Plaintiff to decline a February 2008 needle biopsy; (6) Whipple prevented Plaintiff from meeting with Dr. Weisner on August 19, 2008 and participating in a telephonic conference with Dr. Kisierowski; (7) McCarty delayed providing Thomas with the results of his November 1, 2008 needle biopsy; (8) DiRienzo erred by not giving Plaintiff medication prior to a cancer injection; (9) Whipple caused a delay in Plaintiff's May, 2009 cancer injection; (10) Mummy made a negligent cancer injection; and (11) Hill erroneously dispensed medication.

Prison officials are required under the Eighth Amendment to provide basic medical treatment to prisoners. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). The proper analysis for evaluating a deliberate indifference claim is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).

An inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need to set forth a viable Eighth Amendment medical claim. See Spruill v. Gillis, 372 F.3d at 235-36; Natale v. Camden Cty.

Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  Courts reviewing such claims must determine if the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component).  Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Mines v. Levi, 2009 WL 839011, *7 (E.D. Pa. 2009) (quoting Colburn, 946 F.2d at 1023); Monmouth Cnty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment."  Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008) (quoting Monmouth Cnty. Corr. Inst. Inmates, 834 F.2d at 347).  Without unnecessary elaboration and in light of the Commonwealth Defendants' concession that "Thomas appears to suffer from a serious medical condition", this Court finds that the diagnosis of prostate cancer alleged in the Amended Complaint satisfies the serious medical need requirement.  (Doc. 39, p. 5).

With respect to the deliberate indifference component, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  If inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  See id.

It is initially noted that the allegations of being given improper medication by Hill, a negligent cancer injection by Mummy, a failure by McCarty to timely order or provide a monthly injection, and not being administered pre-injection medication by DiRienzo are claims which sound in negligence and are insufficient for setting forth a viable claim of deliberate indifference. See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).  Simply put, allegations of negligence "do not trigger constitutional protections." Whooten v. Bussanich, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12, 2007) (citation omitted).

Second, in regards to the claims raised against CO Whipple, a non-medical defendant, the Court of Appeals for the Third Circuit has held that a non-physician defendant can not be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. See Durmer, 991 F.2d at 69. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. Id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons."). As previously discussed, the Amended Complaint contends that CO Whipple was antagonistic, refused to permit a telephonic consultation, and prevented Plaintiff from meeting with Doctor Weisner. It is undisputed that during the time frame of those alleged acts of misconduct, Thomas was under the care of the SCI-Coal Twp. Medical Department. More importantly, the alleged conduct attributed to Whipple did not prevent Plaintiff from being provided with any medical treatment. While Whipple may have been insensitive, there are simply no allegations he was responsible for any actual delay or denial of prescribed treatment for a non-medical treatment. It is particularly noted that it was Plaintiff who made the decision to forego his July 19, 2006 PSA testing and there is no contention that

Thomas' alleged inability to confer with physicians on two separate dates impeded or delayed his medical care.

Thomas asserts that the medical Commonwealth Defendants engaged in actions which improperly delayed his treatment for prostate cancer.[11]  Plaintiff acknowledges that upon entering SCI-Coal Twp. he underwent a DRE test of his prostate.  When he began developing symptoms in 2006, Plaintiff was scheduled for a July 19, 2006 test.  However because he became aggravated, Thomas voluntarily elected not to proceed with that test.  Approximately one year later, Plaintiff refused to allow a July 17, 2007 DRE test to be performed because he wasn't feeling well.  It is also undisputed that Thomas refused to undergo a needle biopsy scheduled for February 7, 2008.  He also declined to submit to a DRE test on July 29, 2008.

Based upon the Plaintiff's own allegations this is not a case where medical care or medication was delayed or denied due to some non-medical factor such as a monetary concern.  Rather, Plaintiff readily concedes that diagnostic testing was timely ordered.  Moreover, even though Plaintiff declined testing, prison officials provided him with further opportunities to undergo those tests which he initially refused to take.

Given Plaintiff's admitted multiple refusals to undergo diagnostic testing, his pending claims of unnecessary delays in being provided with treatment by the Commonwealth Medical Defendants are clearly undermined.  Furthermore Thomas acknowledges that he was provided with evaluations by at least five (5) doctors[12] who ordered diagnostic testing (including the

---

[11]  It is also noted that there is no claim by Inmate Thomas that there was any medical treatment which he should have received but was denied

[12]  The Amended Complaint indicates that Thomas at one time or another during his SCI-Coal Twp. confinement was under the care of  Doctors Rodney Campion, Miguel Salomon, Stanley Stanish, Weisner, and Kisierowski.

scheduling of three separate PSA tests and three separate DRE tests), referred him to an oncologist, and that a treatment plan for his prostate cancer was both developed and implemented. Finally, given the fact that he was repeatedly offered PSA and DRE testing, this Court cannot conclude that Plaintiff's assertion that he should have been compelled to undergo tests asserts an actionable constitutional claim.

There is simply no basis for a claim of deliberate indifference under an application of the standards developed in Estelle, Farmer, and Durmer. As demonstrated by Plaintiff's own admitted elections not to have July, 2006 PSA testing, his July 2007 refusal of a DRE test, and his subsequent refusals to undergo a needle biopsy and another refusal to have a DRE test, Thomas alone was responsible for multiple significant delays in his cancer diagnosis and treatment. Moreover, any of the alleged delays attributed to the Commonwealth Defendants pale in comparison to Plaintiff's self inflicted delays. There are also no allegations set forth in the Amended Complaint which could support a determination that any of the dilatory conduct attributed to the Commonwealth Defendants aggravated his condition or otherwise caused him harm. Entry of dismissal in favor of the Commonwealth Defendants with respect to the assertions of medical deliberate indifference is appropriate.

**State Law Claims**

With respect to any pendent state law claims being asserted against the Commonwealth Defendants, federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.[13] See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976). A district court may decline to exercise supplemental jurisdiction over a claim when the court has

---

[13] See (Doc. 33, p. 2).

dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (1997). Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants. New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996) (citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim. Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)).  However, when the federal claim is dismissed prior to trial, a district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

As discussed, Plaintiff's federal claims against the Commonwealth Defendants will not be permitted to proceed.  Based upon that determination, jurisdiction will be declined with respect to any pendent state law claims asserted against the Commonwealth Defendants.

A separate Order will be issued.


Date: March 12, 2012

United States District Judge