UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ANTONIO THOMAS,                         :    CIVIL ACTION NO. 3:10-cv-2249
                                        :
              Plaintiff                 :    (Judge Nealon)
                                        :
       v.                               :
                                        :    **FILED**
                                        :    **SCRANTON**
DAVID VARANO, ET AL.,                   :
                                        :    MAR 2 6 2012
              Defendants                :
                                             _____
                                             Per____*Th . 6 . (*____
                             **MEMORANDUM**      DEPUTY CLERK

**Background**

       Antonio Thomas, an inmate presently confined at the State Correctional Institution, Coal

Township, Pennsylvania (SCI-Coal Twp.) filed this pro se civil rights action pursuant to 42

U.S.C. § 1983.   An Amended Complaint (Doc. 33) was filed on March 22, 2011.

       By Memorandum and Order dated January 3, 2012, Defendant  Muhammad Ikram

M.D.'s unopposed motion to dismiss the Amended Complaint was granted.  A Memorandum

and Order issued by this Court on March 12, 2012 granted dismissal in favor of Defendants

Superintendent David Varano; Health Care Administrator Kathryn McCarty; Nurse Supervisors

Christopher Yackiel and Mary Hensler; Nurses Melissa DiRienzo, Ellen Hill, and Sherri

Mummy; as well as Correctional Officers Jill Whipple, William Reitz, and James Delbaugh.

       As a result of those rulings, the Remaining Defendants are Prison Health Services (PHS)

and the following PHS employees: Rodney Companion, M.D.; Stanley Stanish, M.D.; Miguel

Salomon, M.D.;  and  Physician Assistant (PA) Brian Davis.[1]

       Inmate Thomas states that he was  transferred to SCI-Coal Twp. in 2005 accompanied by

_____

       [1]  A physician is considered to act under color of state law if he or she is under contract to
provide medical services to prisoners.  See Christy v. Robinson, 216 F. Supp. 2d 398, 412 n. 26 (D.
N.J. 2002).

medical records from his former place of incarceration purportedly included detailed information showing that he was diagnosed as having cardiac problems and "blood work results which clearly indicated that plaintiff's prostate specific antigen ("PSA") levels were rising."[2]  Doc. 33, ¶ 19.  Upon entering SCI-Coal Twp., Plaintiff underwent a "complete physical" which included a DRE[3] test by PA Davis, who allegedly told Thomas that his test was negative and that based upon the PA's experience "this showed no cancer."  Id. at ¶ 23.

The Amended Complaint asserts that PA Davis was not qualified to independently diagnose and treat prostate cancer and made an unprofessional opinion which failed to take into consideration the prisoner's medical records.   Moreover, despite having the responsibility to do so during the intake process, Health Care Administrator McCarty allegedly neglected to check Thomas' PSA levels.

On March 14, 2006; April 18, 2006, and April 21, 2006, Plaintiff states that he made complaints of abdominal and back pain to PA Davis, Doctor Companion, and Doctor Salomon . In response to those complaints, Thomas was examined by Doctors Companion and Salomon and provided with ineffective treatment consisting of laxatives and antibiotics.  Id. at ¶ 27.

Due to his continuing claims of being in pain, Thomas was scheduled for a July 19, 2006 PSA test.  According to the Amended Complaint, various  Defendants, including Drs. Companion and Salomon, purportedly failed to provide Thomas with sufficient information regarding prostate cancer and PSA testing.   Those failures allegedly prevented Plaintiff from making informed decisions regarding the "diagnosis and treatment of prostate cancer."  Id. at ¶

---

[2]  The Amended Complaint describes PSA as being a substance made by the prostate gland and PSA testing as being commonly used in the detection of prostate cancer.

[3]  DRE refers to a digital rectal examination, which is also commonly used to detect prostate cancer.

28.  On the day of his scheduled PSA test, Plaintiff asserts that he became aggravated by a correctional officer while waiting in the prison's Medical Department, signed a release form, and returned to his housing unit prior to administration of the test.  Id.

Since the PSA test was not performed, Plaintiff's ineffective treatment with antibiotics and laxatives was continued by his treating physicians without the rescheduling of the PSA test in "total disregard" of his substantial risk of having prostate cancer.  Id. at ¶ 30.

Thomas further admits that during a July 17, 2007 annual physical examination he refused to allow PA Davis to preform a DRE test because he was "still sick and getting worse." Id. at ¶ 32.  Despite that refusal, Plaintiff "agreed to take a PSA test" which "unbeknownst to him" was scheduled for the following day.  Id.  Due to a failure to have his name put on the institutional call out list, Thomas failed to show up for the PSA test.[4]

Despite that apparent scheduling confusion, a PSA test was nonetheless performed three (3) days later, on July 21, 2007.  See id. at ¶ 34.  On July 26, 2007, the prison's Medical Department was notified that based upon Plaintiff's PSA test results he "most likely had cancer that has spread beyond the prostate."  Id. at ¶ 35.  According to the Amended Complaint, Thomas was not informed of that determination until a September 14, 2007 consultation with Doctor Salomon.  Plaintiff adds that Salomon failed to provide him with meaningful information regarding his PSA test results.  Plaintiff asserts that the eighty (80) day delay by Defendants Davis, Companion, and Salomon in advising him of his test results constituted deliberate indifference.[5]

After an additional delay of five (5) days, Salomon issued orders for Thomas to undergo

---

[4]  There is no contention that any of the Remaining  Defendants was responsible for the alleged scheduling error.

[5]  Clearly a delay from July 26, 2007 to September 14, 2007 is not eighty days.

3

a transrectal ultrasound (TRUS) needle biopsy of his prostate gland at Geisinger Medical Center.

An intake evaluation for Inmate Thomas was not scheduled at Geisinger until December 18,

2007. Once again, there is no indication that any of the Remaining Defendants were liable for

that delay.

On February 7, 2008, Plaintiff acknowledges that he refused to be transported to the

Geisinger Urology Department for the purpose of undergoing the scheduled needle biopsy

because a correctional officer and prison nurse refused to provide him with reasonable

information regarding his diagnosis and recommended treatment plan. It is again noted that

there is no claim that any of the Remaining Defendants were involved in that alleged

interference in Thomas' treatment. The Amended Complaint next contends that Doctors

Companion and Salomon failed to exercise "due care to compel treatment" and "merely

continued" the ineffective course of laxative and antibiotic treatment previously ordered. Id. at ¶

43.

Thomas subsequently consented to undergo a second PSA test which indicated that he

now had an extremely high PSA level. Plaintiff admits that he refused to allow PA Davis to

perform a DRE test on July 29, 2008 and was compelled by a prison nurse to sign a release form.

Following this latest refusal, the ineffective treatment previously prescribed by Doctors

Companion and Stanish was indefinitely continued.

On August 8, 2008, the Plaintiff was examined by Doctor Weisner who referred the

prisoner to an oncologist, Doctor Kosierowski, for evaluation. Approximately one week later,

Weisner also gave the prisoner a book on prostate cancer.[6] See id. at ¶ 48. On October 13,

2008, thirteen (13) months after it was initially ordered, Plaintiff underwent a needle biopsy.

---

[6] Kosierowski is not named as a defendant and the extent of his involvement in Plaintiff's treatment is not set forth in the Amended Complaint.

4

The results of the needle biopsy which were faxed to Defendant Health Care Administrator McCarty on November 1, 2008, confirmed that Plaintiff "had advanced metastastic prostate cancer that has spread to the marrow of plaintiff's bones." Id. at ¶ 52. Plaintiff was scheduled to meet with Doctor Weisner to discuss a treatment plan. After a seventeen (17) day delay, Thomas met with Doctor Weisner on November 18, 2008. Cancer treatment was ordered for Plaintiff on November 21, 2008 and actually began six (6) days later. See id. at ¶ 59. This treatment which was apparently ordered by Dr. Weisner included the taking of Casdex tablets and monthly Zoladex injections. See id. at ¶ 61.

Plaintiff next contends that he was given three (3) non-prescribed pills on September 30, 2009 and Doctor Weisner did not respond to his written request seeking the identity of the pills. See id. at ¶ 80. During December, 2009 it is alleged that Doctor Stanish falsely accused Thomas of "cheeking his pain pills." Id. at ¶ 82. Although that accusation was proven to be meritless, Stanish allegedly prescribed Plaintiff a weaker pain medication which exacerbated the prisoner's condition. Plaintiff concludes that as of December 2009 his previously prescribed cancer treatment stopped working. The remainder of the Amended Complaint asserts claims against individuals other then the Remaining Defendants. Plaintiff seeks declaratory relief along with compensatory and punitive damages.

Presently pending is the Remaining Defendants' motion to dismiss the Amended Complaint. See Doc. 46. The opposed motion is ripe for consideration.

**Discussion**

Remaining Defendants claim entitlement to entry of dismissal on the grounds that: (1) Plaintiff's claims are barred by Pennsylvania's applicable two-year statue of limitations; (2) there is no claim that PHS had any practice, policy or custom which deprived Inmate Thomas of

medical care; (3) Plaintiff has not pled facts which would show that any of the purported

deliberate indifference attributed to the Remaining Defendants was the actual and proximate

cause of his injuries; and (4) Thomas fails to state a medical deliberate indifference claim upon

which relief may be granted.

## Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of

complaints that fail to state a claim upon which relief can be granted.   When ruling on a motion

to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the

complaint and all reasonable inferences that can be drawn therefrom, and view them in the light

most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting

Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  The plaintiff must present facts that, if

true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint

should include "a short and plain statement of the claim showing that the pleader is entitled to

relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(requiring plaintiffs to allege facts

sufficient to "raise a right to relief above the speculative level").  Rule 8 demands "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 536 U.S. 662,

129 S.Ct 1937, 1949 (2009).

This requirement "calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Twombly, 550

U.S. at 556.  The reviewing court must determine whether the complaint "contain[s] either direct

or inferential allegations respecting all the material elements necessary to sustain recovery under

some viable legal theory." Id. at 562.

A civil rights complaint should allege the conduct violating plaintiff's rights, the time

and the place of that conduct, and the identity of the responsible officials. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 1950; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). It is additionally noted that pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Statute of Limitations**

Remaining Defendants initially contend that Plaintiff knew of his claims against them "at least by October 25, 2008," at the time he filed an institutional grievance alleging inadequate medical care.[7] Doc. 47, p. 16. Consequently, since Thomas' Complaint was not filed until November 1, 2010, they conclude that entry of dismissal in favor of the Remaining Defendants with exception of the pain medication related claim against Doctor Stanish is appropriate.

As previously discussed by this Court's March 12, 2012 Memorandum and Order, a federal court reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983 must apply the appropriate state statute of limitations which governs personal injury actions. Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 457 n. 9 (3d Cir. 1996); Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).

The United States Supreme Court clarified its decision in Wilson when it held that "courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250 (1989). Pennsylvania's applicable personal injury statute of limitations is two years. See 42 Pa. Cons. Stat. Ann. § 5524(7)

---

[7] A § 1983 claim accrues when the facts which support the claim reasonably should have become known to the plaintiff. Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995).

(Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of

Pittsburgh, 764 F.2d 188, 194 (3d Cir.), cert. denied, 474 U.S. 950 (1985).  Hence, this Court

concurs with the Remaining Defendants' assessment that a two (2) year statute of limitations is

applicable in the present case.

   With respect to the Remaining Defendants' determination that Plaintiff's Complaint was

filed on November 1, 2010, it is noted Thomas' Complaint is dated October 25, 2010 and is

appropriately deemed filed as of that date.  See Houston v. Lack, 487 U.S. 266 (1988)(a

prisoner's submission is deemed filed at the time it is given to prison officials for mailing to the

Court).  Accordingly, the initial premise of Remaining Defendants' untimeliness argument is

faulty.

   Second, if a defendant's conduct is part of a continuing practice, an action is timely so

long as the last act evidencing the continuing pattern falls within the limitations period.  Brenner

v. Local 514, 927 F. 2d 1283, 1295 (3d Cir. 1991).  This Court's March 12, 2012 Memorandum

and Order noted that the continuing pattern exception contemplated under Brenner may be

applicable in this matter.  The Remaining Defendants' pending untimeliness argument does not

address the applicability of the continuing pattern exception.

   Therefore, since Plaintiff's action must be deemed filed as of October 25, 2010 and in

light of the failure of the pending motion to dismiss to address the applicability of the continuing

pattern exception, the request for dismissal on the basis of untimeliness will be denied.

**PHS**

   PHS is a private corporation which provides health care service to SCI-Coal Twp.

inmates on a contractual basis.  The second argument for dismissal asserts that since PHS is

named as a Defendant in the Amended Complaint, an entry of dismissal in favor of said

8

defendant is called for because there is no claim that PHS had a practice, policy or custom which deprived Plaintiff of any medical care. <u>See</u> Doc. 47, p. 17.

It is initially noted that although the caption of the Amended Complaint lists PHS as being a defendant, the section of the Amended Complaint (§ III DEFENDANTS) [8] which lists each Defendant does not include any listing for PHS.   Accordingly , there is some confusion as to whether it is actually the Plaintiff's intention to pursue a claim against PHS.

Nonetheless, assuming <u>arguendo</u> that Plaintiff is seeking to obtain relief against PHS, this Court would agree that entry of dismissal is appropriate.  In order to establish a viable § 1983 claim against a private corporate entity such as PHS, it must be asserted that said defendant had a policy, practice, or custom which caused injury to the plaintiff.  <u>See</u> <u>Adonai-Adoni v. King</u>, 2009 WL 890683 * 2 (E.D. Pa. March 31, 2009)(a private health care provider can only be liable under § 1983 if claim rests upon some policy, practice or custom); <u>see also</u> <u>Riddick v. Modery</u>, 250 Fed. Appx. 482, 483-84 (3d Cir. 2007).

The Amended Complaint does not allege that PHS had unconstitutional policies, customs or practices.  Plaintiff makes no indication that he has any evidence or knowledge of any PHS policies or procedure that resulted in him being denied or delayed from receiving medical care. Based upon an application of the above standards to the Amended Complaint there is simply no claim or no alleged facts which could support an allegation based upon any PHS policy or directive, entry of dismissal in favor of Defendant PHS is appropriate.    <u>See</u> <u>Carpenter v. Kloptoski</u>, 2010 WL 891825 * 8 (M.D. Pa. March 10, 2010)(§ 1983 claim against PHS solely on the basis that it was responsible for providing health care is subject to dismissal) .

---

[8] <u>See</u> Doc. 33, pp. 2-3.

**Deliberate Indifference**

The next argument by Remaining Defendants contends that "Thomas has failed to plead

sufficient factual averments to show deliberate indifference by Dr. Companion, Dr. Salomon,

Dr. Stanish and Davis." Doc. 47, p. 18.  They conclude that Plaintiff's disagreements with the

medical care provided to him at best sets forth assertions of negligence not deliberate

indifference.

The Amended Complaint sets forth the following claims of deliberate indifference

against the Remaining  Defendants: (1) failure of PA Davis to diagnose Plaintiff's cancer during

the intake procedure; (2) Doctors Companion and Salomon failed to diagnose Thomas with

cancer when treating his complaints of abdominal and back pain; (3) Davis, Companion, and

Salomon were responsible for a delay from July 21, 2007 to September 14, 2007 in conveying

the PSA test results to the Plaintiff; (4) Salomon failed to provide Plaintiff with sufficient

information as to the consequences of his unfavorable PSA test results; (5) Thomas should have

been compelled to undergo an earlier needle biopsy; and (6)  Dr. Stanish acted improperly by

prescribing weaker pain medication.

The Eighth Amendment "requires prison officials to provide basic medical treatment to

those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing

Estelle v. Gamble, 429 U.S. 97 (1976).  In order to establish an Eighth Amendment medical

claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to

evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218,

235 - 36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir.

2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1)

deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs

(the objective component). <u>Monmouth Cty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 346

(3d Cir. 1987); <u>West v. Keve</u>, 571 F.2d 158, 161 (3d Cir. 1979).  A serious medical need is one

that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a

layperson would recognize the need for a doctor's attention.  <u>Monmouth Cty. Corr. Inst. Inmates</u>,

834 F.2d at 347.

   The Supreme Court has established that the proper analysis for deliberate indifference is

whether a prison official "acted or failed to act despite his knowledge of a substantial risk of

serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994).  Furthermore, a complaint that a

physician or a medical department "has been negligent in diagnosing or treating a medical

condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as]

medical malpractice does not become a constitutional violation merely because the victim is a

prisoner." <u>Estelle</u>, 429 U.S. at 106.

   There is no argument by the Remaining Defendants that Plaintiff has not satisfied the

serious medical need requirement.  As noted by this Court's March 12, 2012 Memorandum and

Order, the diagnosis of prostate cancer alleged in the Amended Complaint satisfies the serious

medical need requirement.  <u>See</u> Doc. 74, p. 18.

   With respect to the deliberate indifference component, a complaint that a physician or a

medical department "has been negligent in diagnosing or treating a medical condition does not

state a valid claim of medical mistreatment under the Eighth Amendment [as] medical

malpractice does not become a constitutional violation merely because the victim is a prisoner."

<u>Estelle</u>, 429 U.S. at 106.  When a prisoner has actually been provided with medical treatment,

one cannot always conclude that, if such treatment was inadequate, it was no more than mere

negligence.  <u>See Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993).  If inadequate treatment

results simply from an error in medical judgment, there is no constitutional violation.  See id.

It is initially noted that Plaintiff's claims that:  Doctor Stanish prescribed weaker pain medication; an erroneous diagnosis was made by Doctors Companion and Salomon; Companion and Salomon provided Thomas with insufficient information regarding his condition; and that PA Davis performed an inadequate prostate cancer screening  are allegations which clearly sound in negligence and as such are insufficient for setting forth a viable claim of deliberate indifference against those Defendants.  See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).  Simply put, allegations of negligence "do not trigger constitutional protections."  Whooten v. Bussanich, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12, 2007)(citation omitted).

With respect to the contentions that Defendants Davis, Companion and Salomon were responsible for delays in providing Thomas with diagnostic testing, it is noted that Plaintiff acknowledges that upon entering SCI-Coal Twp. he underwent a timely DRE test of his prostate.  When the prisoner began developing symptoms in March-April, 2006, he was scheduled for a July 19, 2006 PSA test.  However, Thomas voluntarily elected not to proceed with that testing.  Approximately one year later, Plaintiff refused to allow a July 17, 2007 DRE test to be performed because he wasn't feeling well.  It is also undisputed that Thomas refused to undergo a needle biopsy scheduled for February 7, 2008.  He also declined to submit to another proposed DRE test on July 29, 2008.

As demonstrated by the Plaintiff's own admissions, multiple unfortunate delays in diagnostic testings rested solely on his shoulders.  According to the Amended Complaint, this is simply not a case where diagnostic testing was denied or delayed due to some non-medical factor such as a monetary concern.  Rather, Plaintiff readily concedes that diagnostic testing was timely ordered.  Moreover, even though the prisoner initially declined the offered testing, the

Remaining Defendants continued to provide him with further opportunities to undergo those same diagnostic tests which he previously refused to take.  The Plaintiff was also referred to Doctor Ikram, a psychiatrist.   Based upon the admissions by Plaintiff which are included in the Amended Complaint, entry of dismissal with respect to the allegations of delayed diagnostic testing is appropriate.

Thomas also asserts that his treatment for prostate cancer was improperly delayed.  It is noted that Plaintiff admits that he was under the care of five (5) doctors,  including an oncologist, [9] who ordered diagnostic testing (including the scheduling of three separate PSA tests and three separate DREs) and implemented a treatment plan for his prostate cancer.  There is no claim that Plaintiff was ever denied any needed or prescribed treatment.  While there may have been some scheduling related delays, there are no facts raised regarding any of the Remaining Defendants that could plausibly support a claim that those individuals intentionally delayed medical care to Thomas.  In addition, Plaintiff's admitted multiple refusals to undergo diagnostic testing further undermine his claims of unnecessary delays in being provided with treatment.  As correctly noted by the Remaining Defendants, "[a]t best Thomas alleges medical malpractice." Doc. 47, p. 19.

Finally, Plaintiff makes a bald claim that Remaining Defendants Companion and Salomon should have forced the Plaintiff to undergo diagnostic testing.  It is undisputed that Plaintiff exercised his right to refuse medical treatment and was thereafter  referred to Doctor Ikram, a psychiatrist for a mental health consultation on October 10, 2007.  Given the fact that Thomas was repeatedly offered PSA and DRE testing and the failure of the Amended Complaint

---

[9] The Amended Complaint indicates that Thomas at one time or another during his SCI-Coal Twp. confinement was under the care of  Doctors Rodney Campion, Miguel Salomon, Stanley Stanish, Weisner and Kosierowski.

to set forth any facts which would establish that any of the Remaining Defendants were vested with the authority to seek court approval for the purpose of providing the prisoner with involuntary treatment, this Court agrees with Remaining Defendants' contention that Doctors Salomon and Companion "had no ability to force him to have a needle biopsy test" and that only the Pennsylvania Department of Correction was vested with the discretion to seek court approval for compelled treatment.  Doc. 47, p. 26.

In conclusion, there is simply no basis for a claim of deliberate indifference under an application of the standards developed in Estelle, Farmer, and Durmer.  As demonstrated by Plaintiff's own admitted election not to have July, 2006 PSA testing, his July 2007 refusal of a DRE test and his subsequent refusals to undergo a needle biopsy and another refusal to have a DRE test, it cannot be disputed that Thomas alone was responsible for multiple, significant delays in his cancer diagnosis and treatment.  There are also no allegations set forth in the Amended Complaint which could support a determination that any of the dilatory  conduct attributed to the Remaining Defendants aggravated Thomas' condition or otherwise caused him harm.  Entry of dismissal in favor of the Remaining Defendants with respect to the assertions of medical deliberate indifference is appropriate.

**But For Causation**

Remaining Defendants' final argument asserts that Plaintiff has not pled facts which would show that any of their purported deliberate indifference was the actual and proximate cause of Thomas' injuries.  See Doc. 47, p. 29.  They add that Plaintiff "never states that 'but for' the actions or omissions of Dr. Companion, Dr. Stanish, Dr. Salomon and Davis he would have suffered the injuries he claims."  Id.  Thus, they conclude that the claims asserted against the Remaining Defendants are not sufficiently plausible as required under Twombly and Iqbal.

A plaintiff ultimately bears the burden of establishing a causal connection between the alleged deliberate indifference and his injuries. Absent an obvious causal relationship, expert medical testimony on causation must be presented. See Saldana, 260 F.3d at 232; Ford v. Mercer County Correctional Center, 171 Fed. Appx. 416, 420 (3d Cir. 2006). An obvious causal relationship only "exists when the injury is either an 'immediate and direct' or the 'natural and probable' result" of the underlying act. Texter v. Merlina, 2008 WL 545032 *1 (M.D. Pa. Feb. 26, 2008)(Conner, J.). The injury and the act must be so closely connected that a lay person could diagnose the causal connection.

This is not one of those rare cases where the causal connection is so obvious as to relieve Plaintiff from the burden of presenting an expert witness." Niklaus v. Vivadent, Inc. U.S.A., 767 F. Supp. 94, 95-96 (M.D. Pa. 1991)(McClure, J.)(Pennsylvania law requires that in a personal injury case when there is no obvious causal connection between the alleged act and the injury unequivocal medical testimony is necessary to establish the causal connection); Berman v. United States, 205 F. Supp.2d 362, 264 (M.D. Pa. 2002). Thomas' prostate cancer undisputably developed over a period of time and it simply cannot be concluded that it was either an immediate and direct or a natural and probable result of the alleged deliberate indifference attributed to the Remaining Defendants.

Although there is no indication that Plaintiff has obtained any expert evidence to support his delay claims, that does not by itself entitle the Remaining Defendants to dismissal at this juncture. Rather, the relevant inquiry at this point in the proceedings regarding Remaining Defendants' final argument is whether the assertions set forth in the Amended Complaint, if proven, would be plausible to prove causation.

As previously discussed, Plaintiff asserts that beginning in March, 2006 the Remaining

Defendants provided him with ineffective treatment. This Court has already concluded that because those assertions sound in negligence they cannot proceed. While Plaintiff also raises claims of delayed treatment, he acknowledges that the one year delay between the initially scheduled July 19, 2006 PSA test and the actual July 21, 2007 PSA test was not due to any conduct attributed to any of the Remaining Defendants.

It is also admitted that Plaintiff refused to undergo a needle biopsy scheduled for February 7, 2008 and that the needle biopsy was not performed until sone thirteen months later on October 13, 2008. Once again, this delay was the result of an election made by Plaintiff. Based upon those admissions, this Court has concluded that there are no facts asserted against any of the Remaining Defendants that could plausibly support a claim that there was intentionally  delayed medical care to Thomas. Thus, this Court agrees that the Amended Complaint has failed to satisfy the plausibility requirement of Twombly and Iqbal.

**State Law Claims**

With respect to any pendent state law claims being asserted against the Remaining Defendants, federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.[10] See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976). A district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (1997). Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants. New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

---

[10] See Doc. 33, p. 2.