## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO THOMAS, | : | CIVIL ACTION NO. 3:10-cv-2249 |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID VARANO, <u>ET</u> <u>AL</u>., | : | |
| | : | |
| Defendants | : | |

## <u>MEMORANDUM</u>

### <u>Background</u>

On November 1, 2010, this civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Plaintiff, Antonio Thomas, an inmate presently confined at the State Correctional Institution, Coal Township, Pennsylvania ("SCI-Coal Twp."). (Doc. 1). On November 22, 2011, Plaintiff filed an amended complaint naming sixteen (16) Defendants. (Doc. 33).

On January 3, 2012, a Memorandum and Order was issued, granting Defendant Muhammad Ikram M.D.'s unopposed motion to dismiss the Amended Complaint. (Doc. 69). On March 12, 2012, dismissal was granted in favor of Defendants Superintendent David Varano; Health Care Administrator Kathryn McCarty; Nurse Supervisors Christopher Yackiel and Mary Hensler; Nurses Melissa DiRienzo, Ellen Hill, and Sherri Mummy; as well as Correctional Officers

Jill Whipple, William Reitz, and James Delbaugh.  (Docs. 74 and 75).

By Memorandum and Order dated March 26, 2012, remaining Defendants

Prison Health Services (PHS); Rodney Companion, M.D.; Stanley Stanish, M.D.;

Miguel Salomon, M.D.;  and Physician Assistant (PA) Brian Davis' motion to

dismiss was granted.  (Docs. 76 and 77).

In an Opinion dated June 4, 2013, the United States Court of Appeals for

the Third Circuit affirmed the dismissal of Plaintiff's action with exception of two

(2) claims.  See Thomas v. Varano, 532 Fed. Appx. 142 (3d Cir. 2013).

Specifically, the Court of Appeals concluded that the Eighth Amendment claims

against Defendants Health Care Administrator McCarty and Stanley Stanish, M.D.

should proceed.  (Doc. 90).   Specifically, with respect to Defendant McCarty, it

was concluded that the deliberate indifference claim that said Defendant waited

approximately seventeen (17)  days before scheduling Plaintiff to meet with Dr.

Weisner should proceed.  (Doc. 90-2, p. 7).

Thereafter, on August 27, 2013, the two (2) remaining Defendants filed

separate answers to the amended complaint.  (Docs. 91 and 92).  On November 15,

2013, this Court conditionally granted Plaintiff's request for appointment of

counsel, and pro bono counsel subsequently entered an appearance on behalf of

Plaintiff.  (Doc. 102).  Presently pending is remaining Defendant McCarty's

2

motion for summary judgment filed on March 20, 2014. (Doc. 114).  The opposed motion is now ripe for consideration.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett,

477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its]

own affidavits, or by the depositions, answers to interrogatories, and admissions

on file, designate specific facts showing that there is a genuine issue for trial."  Id.

(internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).

Summary judgment should be granted where a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.

"'Such affirmative evidence – regardless of whether it is direct or circumstantial –

must amount to more than a scintilla, but may amount to less (in the evaluation of

the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v.

Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Discussion**

This action centers around the diagnostic services and subsequent treatment

which were provided to Plaintiff for his prostate cancer.  As previously noted,

Defendant McCarty was employed as the SCI-Coal Twp. Health Care

Administrator during the relevant time period.  According to the Plaintiff, on

November 1, 2008, a copy of his biopsy results,  dated October 24, 2008, which

confirmed that he had advanced  prostate cancer was faxed from the Geisinger

Medical Center to McCarty's office.  (Doc. 33, p. 18).

It is alleged that Defendant McCarty waited approximately seventeen (17) days before scheduling Plaintiff to meet with Dr. Weisner.[1]  (Id. at 19).  The purpose of the meeting with Dr. Weisner, a non-defendant, was to discuss Thomas' prostate cancer treatment plan.  The amended complaint contends that the unreasonable delay by Defendant McCarty prevented Plaintiff from being provided with temporary relief from the substantial pain, which was being caused by his cancer.

The moving Defendant's supporting brief acknowledges that a review of Plaintiff's institutional medical records shows that a biopsy was performed on October 23, 2008.  (Doc. 115, p. 3).  Defendant McCarty further explains that on October 24, 2008, a fax was sent to the prison indicating that the biopsy procedure had been completed.  On Friday, November 7, 2008, a biopsy report was faxed to the prison and "received" by a representative of Prison Health Services (PHS).  (Id. at 3-4).  PHS is described by Defendant McCarty as bearing the responsibility of scheduling medical consultations and appointments for the Plaintiff.  Thomas "was seen for a bone scan on November 12, 2008."  (Id. at p. 4).  Defendant

---

[1]

Defendant McCarty identifies Dr. Weisner as being an employee of PHS who served as the SCI-Coal Twp. Medical Director in 2008.

McCarty adds that Dr. Weisner met with Thomas the following day, November 13, 2008, four (4) business days after the biopsy report was received.

Health Care Administrator Defendant McCarty contends that she is entitled to entry to entry of summary judgment on the grounds that: (1) Plaintiff cannot prove deliberate indifference to a serious medical need; and (2) Plaintiff failed to properly exhaust his available administrative remedies. (Doc. 115, p. 4).

**Deliberate Indifference**

The summary judgment motion contends in part that the undisputed facts do not support a claim that there was a seventeen (17) day delay by Health Care Administrator Defendant McCarty in scheduling additional treatment for Plaintiff following the issuance of the biopsy report. (Doc. 115, p. 8).

The moving Defendant notes that after subtracting the intervening weekend, Plaintiff met with Dr. Weisner four (4) business days after the biopsy report was faxed on November 7, 2008. Moreover, it was the responsibility of the medical contractor, PHS, not Defendant McCarty, to schedule medical appointments, and Plaintiff had ongoing access to Dr. Weisner during the relevant time period.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to

6

establish an Eighth Amendment medical claim, an inmate must allege acts or

omissions by prison officials sufficiently harmful to evidence deliberate

indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235-36

(3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582

(3d Cir. 2003).  In the context of medical care, the relevant inquiry is whether the

defendant was: (1) deliberately indifferent (the subjective component) to (2) the

plaintiff's serious medical needs (the objective component).  Monmouth Cty. Corr.

Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571

F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as

requiring treatment or one that is so obvious that a lay person would easily

recognize the necessity for a doctor's attention."  Mines v. Levi, 2009 WL 839011

*7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth

Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction

of pain results as a consequence of denial or delay in the provision of adequate

medical care, the medical need is of the serious nature contemplated by the Eighth

Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir.

2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

With respect to the serious medical need requirement, the undisputed fact

that Plaintiff has been diagnosed and treated for prostate cancer is sufficient to satisfy the serious medical need requirement.

Under the subjective deliberate indifference component of Estelle, the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. Id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. Id.; see also Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

8

Copies of Plaintiff's institutional medical records show that the biopsy was performed on October 23, 2008. A report indicating that the biopsy procedure had been completed was prepared on October 24, 2008 and faxed to the prison. (Doc. 117-5, p. 10). A bone scan was conducted on November 12, 2008. (Doc. 117-6, p. 2). Plaintiff met with Dr. Weisner on November 13, 2008. (Doc. 117-7, p. 3).

A declaration under penalty of perjury by current SCI-Coal Twp. Health Care Administrator Jodie Martino states that reports from outside medical providers are typically faxed to a PHS representative, and would the be placed on the inmate's medical chart for review by a doctor. (Doc. 117-8, p. 3). Martino confirms the following: the biopsy was performed on October 23, 2008; a fax was sent to the prison on October 24, 2008 indicating that the biopsy procedure was completed; and a biopsy report containing the prostate cancer diagnosis was received by PHS on November 7, 2008.

Plaintiff's opposing brief acknowledges that based upon a document produced at the time of his deposition, the actual date that the biopsy results were faxed to the prison may have been November 7, 2008, instead of November 1, 2008, as alleged in the amended complaint). (Doc. 132, p. 8).

Based upon the parties' submissions, the following timeline transpired: (1) a biopsy was performed on October 23, 2008; (2) on October 24, 2008, a fax was

sent to the prison confirming that biopsy was complete; (3) on November 7, 2008, the biopsy results were faxed to the prison; (4) on November 12, 2008, a bone scan was performed; and (5) on November 13, 2008, Plaintiff consulted with Dr. Weisner. Thus, at most this case involves a six (6) day delay not the seventeen (17) day delay initially alleged by Plaintiff. Furthermore, on one (1) of those intervening days, Plaintiff underwent a bone scan, while two (2) other days were an intervening weekend.

It is noted that there is a factual dispute as to whether the biopsy results were faxed to Defendant McCarty as opposed to a PHS representative. Although the delay was shorter than initially alleged seventeen (17) day delay, the moving Defendant has not produced any evidence addressing the concern by the Court of Appeals regarding the allegation that any inaction by Defendant McCarty delayed the Plaintiff's ability to obtain relief from the adverse effects of his cancer. Thus, although the Moving Defendant has sufficiently shown that he delay was considerably shorter than the delay originally alleged, there is still arguably a factual dispute as to the claim that Defendant McCarty allegedly engaged in inaction which delayed Plaintiff's ability to obtain relief from the adverse effects of his cancer. In light of that dispute and the concern voiced by the Third Circuit Court of Appeals, entitlement to entry of summary judgment has arguably not been

clearly established based on Defendant McCarthy's first summary judgment argument.

**Administrative Exhaustion**

It is alternatively alleged by the Moving Defendant that "Plaintiff failed to file a grievance concerning his claim against McCarty and properly appeal any denial to final review." (Doc. 115, p. 6).

> Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur

prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6ᵗʰ Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6ᵗʰ Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See Jones v. Bock, 549 U.S. 199, 216 (2007); see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[2] The United States Supreme Court in Jones noted that the primary purpose of the exhaustion requirement is to allow prison officials to address complaints before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.

The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004). As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run

---

[2] In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

around the exhaustion requirement." Id. at 230. It also ensures "prisoner

compliance with the specific requirements of the grievance system" and

encourages inmates to pursue their administrative grievances "to the fullest." Id.

Similarly, the Supreme Court has observed that proper exhaustion of available

administrative remedies is mandatory, meaning that prisoners must comply with

the grievance system's procedural rules, including time limitations. Woodford v.

Ngo, 548 U.S. 81 (2006).

A Consolidated Inmate Grievance Review System has been established by

the Pennsylvania Department of Corrections ("DOC").[3] Section V of DC-ADM

804 (effective December 8, 2010) states that "every individual committed to its

custody shall have access to a formal procedure through which to seek the

resolution of problems or other issues of concern arising during the course of

confinement." (Doc. 29, p. 8). It adds that the formal procedure shall be known

as the Inmate Grievance System and provides a forum of review and two (2)

avenues of appeal. Section VI ("Procedures") of DC-ADM 804 provides that,

after attempted informal resolution of the problem, a written grievance may be

submitted to the Facility Grievance Coordinator within fifteen (15) working days

after the events upon which the claims are based, but allowances of extensions of

---

[3] The DOC's grievance system has been periodically amended.

13

time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

The Moving Defendant asserts that although Plaintiff filed twenty-four (24) grievances while confined at SCI-Coal Twp., only two (2) were appealed to final review. More importantly, during 2008, Plaintiff filed only one (1) grievance, No. 248098. While that grievance was related to Plaintiff's health care and was appealed to final review, it was submitted during October, 2008, prior to the events underlying the claim against Defendant McCarty. A supporting declaration under penalty of perjury by SCI-Coal Twp. Superintendent's Assistant Trisha Kelley provides that the sole grievance filed by Thomas in 2008, No. 248098, was exhausted, but was received on October 27, 2008 prior to the November 2008 delay at issue herein. (Doc. 117-4, ¶¶ 18-22).

Plaintiff, relying on an unpublished decision, <u>Allah v. Blaine</u>, 2005 U.S. App. LEXIS 28317 *4-5 (3d Cir. Dec. 21, 2005) (a defendant must raise a non-jurisdictional defense early in litigation), counters that the Moving Defendant waived a non-exhaustion defense because it was not asserted in Defendant McCarty's immediate response to the amended complaint. (Doc. 132, p. 3). Plaintiff also asserts that his trial testimony "will present facts which, if believed, constitute grounds for any alleged failure to exhaust administrative remedies to be excused." (<u>Id</u>. at p. 6). For instance, Plaintiff maintains that he can testify that his mind was clouded due to his poor physical and mental condition which, in conjunction with the negative attitudes of prison staff, interfered with his ability to file a timely grievance.

The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. <u>Brown v. Croak</u>, 312 F.3d 109, 112 (3d Cir. 2002) (citing <u>Nyhuis</u>, 204 F.3d at 75). A subsequent decision by the Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. <u>Hill v. Smith</u>, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." <u>Pena-Ruiz v.</u>

Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).  Based upon those decisions, Plaintiff's argument that it would have been futile to seek administrative relief is not persuasive.

Second, Plaintiff's assertions that his poor mental and physical condition prevented him from seeking administrative relief are undermined by the undisputed fact that he initiated a grievance on October 25, 2008, just prior to the alleged deliberate indifference by Defendant McCarty during early November 2008, and that said grievance was, thereafter, appealed to all levels of the DOC's grievance review system.

The remaining contention, relying on the Third Circuit Court of Appeals' unpublished decision in Allah, maintains that Defendant McCarty waived the non-exhaustion argument by not raising it in her initial response to the amended complaint.  In a decision subsequent to Allah, Drippe v. Gototweski, 434 Fed. Appx. 79 (3d Cir. 2011), the Third Circuit Court of Appeals held that a failure to file a timely summary judgment motion based upon non-exhaustion of administrative remedies did not constitute a waive of that defense, but only a waiver of the moving defendant's ability to receive summary adjudication of that defense.  Unlike Drippre, this matter does not involve an untimely summary judgment motion.  Second, in Drippre, the Court of Appeals indicated that it is

appropriate to raise a non-exhaustion defense in a timely pre-trial motion.

It is also noted that resolution of a non-exhaustion defense often involves reliance on facts outside of those asserted in the complaint, thus, a non-exhaustion argument must be pursued via a summary judgment motion. There was no prior summary judgment motion filed by Defendant McCarty in this matter. Because the undisputed record shows that the surviving claim against Defendant McCarty was unexhausted, entry of summary judgment in favor of Defendant McCarty on that basis is appropriate.

**Pendent Jurisdiction**

Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976). Supplemental jurisdiction may be declined over a claim when the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (1997). Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants. New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the

federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim.

Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)).

However, when the federal claim is dismissed prior to trial, a district court should

decline to decide the pendent state claims, "unless considerations of judicial economy,

convenience, and fairness provide an affirmative justification for doing so." Borough

of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

In light of this Court's determination that Defendant McCarty entitled to entry of

summary judgment with respect to Plaintiff's federal claims on the basis of non-

exhaustion, jurisdiction will be declined with respect to any pendent state law claims

against said Defendant.

An separate Order will be issued.


**Dated**:   February 20, 2015

/s/ **William J. Nealon**
**United States District Judge**